UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHAD HALL,<br><br>                    Plaintiff;<br><br>-against-<br><br>THE URBAN ASSEMBLY, INC., d/b/a "URBAN ASSEMBLY SCHOOL FOR THE PERFORMING ARTS,"<br><br>                    Defendant. | Index No. 19-cv-11572<br><br>**COMPLAINT**<br><br>PLAINTIFF DEMANDS A TRIAL BY JURY |

Plaintiff, Chad Hall, by and through his undersigned attorneys, brings this action against the above-named Defendant, and Plaintiff alleges for his Complaint as follows:

### PARTIES

1. Mr. Chad Hall ("**Plaintiff**" or "**Hall**") is a natural person and a United States Citizen.

2. Defendant The Urban Assembly, Inc., doing business as the "Urban Assembly School for the Performing Arts" ("UASPA"), is a domestic not-for-profit corporation organized under the laws of the State of New York with a school located at 509 West 129th Street, New York, NY 10027.

### JURISDICTION AND VENUE

3. Jurisdiction is founded upon 28 U.S.C. § 1331 and principles of supplemental jurisdiction under 28 U.S.C. § 1367.

4. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(2), in that a substantial part—or all—of the events or omissions giving rise to the claims in this Complaint occurred in Harlem.

5. Following commencement of this action, a copy of this Complaint will be delivered to the New York City Commission on Human Rights and on the Office of the Corporation Counsel of the City of New York, thereby satisfying New York City's Administrative Code notice requirements pursuant to New York City, N.Y. Code § 8-502(c).

6. No other legal or administrative filings regarding this dispute are outstanding or ongoing.

## STATEMENT OF FACTS COMMON TO ALL CLAIMS

7. Hall worked as an Assistant Dean of Students at UASPA and was employed with UASPA from in or around October 2012 until his termination on or around January 23, 2019.

8. On or around September 26, 2018 a violent physical assault occurred at UASPA.

9. UASPA collects students' cell phones, and redistributes the cell phones when school is concluded.

10. During a cell phone redistribution, Mr. Hall instructed all students to queue in-line, pursuant to school policy and standard practices.

11. An unruly female student, "**Bad Jane Doe,**" did not follow Hall's instruction, Bad Jane Doe cussed at Hall, and Bad Jane Doe physically assaulted Hall.

12. At no time did Hall physically hit or strike Bad Jane Doe in any manner, or any other student or person.

13. Another female student, "**Good Jane Doe**," stuck-up for Hall and told Bad Jane Doe to follow Hall's instructions.

14. This further enraged Bad Jane Doe, and she threw a garbage pail at Good Jane Doe.

15. Bad Jane Doe missed, and the garbage pail struck another female student, "**Innocent Jane Doe**."

16. The force of the garbage pail was strong enough to break Innocent Jane Doe's glasses.

17. Hall was faced with a violent, dynamic, and escalating situation where both he and another student had been physically assaulted.

18. Hall told a fellow UASPA administrator that Bad Jane Doe had to leave.

19. Bad Jane Doe overheard Hall and told Hall: "suck my d**k!"

20. Dismissing her vulgar and anatomically impossible suggestion Hall replied, "grow one," and proceeded to calm the other students down, ensure Innocent Jane Doe did not need an ambulance, to deescalate the situation, and ensure Bad Jane Doe was removed by another UASPA faculty member.

21. On or around October 11, 2018, administrators called a meeting with Hall to discuss the September 26, 2018 incident where Hall never physically assaulted anyone and Hall deescalated a dynamic and then-escalating situation.

22. After the meeting, Hall never heard anything further about the matter until his retaliatory termination months later.

23. In or around early January 2019, Hall engaged in written protected activity by submitting a letter that informed UASPA of his serious and potentially permanent disability and his need for medical leave in the near-future.

24. In or around 2017, Hall took short-term disability leave for an unrelated serious medical condition, and management was aware that he had used most of his benefits for leave and that the only leave policy Hall could utilize was the Family Medical Leave Act ("**FMLA**").

25. On or around Friday, January 18, 2019, Principal McMahon informed Hall she had reviewed the disability letter.

26. Principal McMahon questioned Hall about what the letter meant for the school, and specifically she asked whether Hall intended to take medica leave.

27. Hall informed Principal McMahon he would need to follow the advice of his doctor and his lawyer, and that his understanding was that he would need to take leave when medically necessary.

28. Hall could observe that Principal McMahon did not like this information and his request for FMLA leave.

29. Days later, on or around January 23, 2019, Principal McMahon called Hall into her office and handed Hall a termination letter dated that same day.

30. The pretextual reason UASPA used to justify the termination was Hall's four-month-old response of "grow one" to a violent student in the midst of an escalating situation where he had already been physically assaulted.

31. This explanation is pretextual because the termination is out of all proportion to the harm Hall committed. A flippant and dismissive comment in an emergency situation does not proportionally justify a career termination.

32. This explanation is pretextual because the timing is highly suspicious. If the comment were that harmful—as we are to believe—then UASPA would not need four months to come to a termination decision—it would have been an open/shut case.

33. This explanation is pretextual because the timing is additionally highly suspicious since Hall had just engaged in written and verbal protected activity informing UASPA he would need to take FMLA leave for a serious medical disability.

34. This explanation is pretextual because UASPA, on at least one occasion, allowed a teacher to intentionally physically assault a student, and that teacher remains employed, was never suspended, and upon information and belief received no discipline whatsoever. Unlike Hall, this teacher had not engaged in FMLA protected activity.

35. This physical assault by the teacher was unprovoked and not in self-defense or the defense of any other person.

## FIRST CLAIM
(FMLA INTERFERENCE)

36. Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

37. This claim is against the named-Defendant in the caption, above.

38. Defendant committed the ultimate interference with FMLA rights by terminating the Plaintiff two weeks after he asked to exercise his FMLA rights.

39. Upon information and belief, Defendants' actions were done intentionally or with reckless indifference to Plaintiff's statutorily protected FMLA rights.

40. As a direct and proximate result of the intentional and/or reckless Defendants' actions, Plaintiff suffered loss of employment, lost wages, monetary damages, emotional distress, the incursion of attorneys' fees, and other damages.

## SECOND CLAIM
(FMLA RETALIATION)

41. All preceding paragraphs are incorporated by reference as if fully stated herein.

42. This claim is against the named-defendant in the caption, above.

43. Defendant engaged in FMLA retaliation by terminating Plaintiff after he requested leave for a serious medical condition and/or Defendant engaged in FMLA anticipatory-retaliation by terminating Plaintiff who it credibly believed would seek to take FMLA leave for a serious medical condition.

44. As a direct and proximate result of the intentional and/or reckless Defendant's actions, Plaintiff suffered loss of employment, lost wages, monetary damages, emotional distress, the incursion of attorneys' fees, and other damages.

## THIRD CLAIM
(Retaliation Violating NYCHRL)

45. All preceding paragraphs are incorporated by reference as if fully stated herein.

46. This claim is against the named-Defendant in the caption, above.

47. Plaintiff engaged in protected activity by informing Defendant of his serious medical condition and his medically-necessary need for leave.

48. As a direct and proximate result of Defendants' actions, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including without limitation, loss of past

and future income for which Plaintiff is entitled to an award of damages pursuant to § 8-502(a) and reasonable attorneys' fees and costs pursuant to § 8-502(f).

49. As a direct and proximate result, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which Plaintiff is entitled to an award of damages.

## FOURTH CLAIM
### (Disability Discrimination Violating NYCHRL)

50. Plaintiff repeats and realleges the allegations contained in all of the preceding paragraphs as if fully set forth herein.

51. This claim is against the named-Defendant in the caption, above.

52. By the actions described above, *inter alia*, Defendant discriminated against Hall by terminating him after he informed the Defendant about his serious medical condition and need for leave.

53. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, harm for which he is entitled to an award of monetary damages and other relief, in addition to costs and reasonable attorneys' fees pursuant to New York City, N.Y. Code § 8-502(g).

54. Defendants' unlawful and discriminatory actions constitute malicious, willful, and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages pursuant to New York City, N.Y. Code § 8-502(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Chad Hall *respectfully* requests judgment as follows:

A. An award of damages against Defendants in an amount to be determined at trial, plus interest, to compensate Plaintiff for all monetary and/or economic damages, including,

without limitation, loss of past and future income, wages (including gratuities), compensation, seniority, and other benefits of employment;

B.	An award of damages against Defendants in an amount to be determined at trial, plus interest, to compensate for all *non*-monetary and/or compensatory damages, including, without limitation, compensation for Plaintiff's mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

C.	An award of punitive damages in an amount to be determined at trial;

D.	Prejudgment interest on all amounts due;

E.	An award of costs that Plaintiff has incurred in this action, including, without limitation and as applicable, expert witness fees, if any, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and,

F.	Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby *respectfully* demands a trial by jury on all issues that can be considered, determined, and/or resolved by a jury.


**Dated:	New York, New York
	December 18, 2019**

                                   **Respectfully submitted,**

                                   By: _____
                                   Jeffrey D. Jones, *Esq*.
                                   SDNY #JJ1983; NY Bar #4843363
                                   **THE JONES LAW FIRM**
                                   523 East Pine Place
                                   Tulsa, OK 74106-4301
                                   (574) 876-4715
                                   jj@jeffreyjoneslawfirm.com
                                   *-and-*

Mitchell M. Medina, Esq. (MM2011)
OF COUNSEL TO JEFFREY D. JONES, ESQ.

P.O. Box 4165
New York, NY 10163-4165

(212) 235-1211
Mitchell@MedinaLawPractice.com

*Attorneys for Plaintiff*