```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
CHAD HALL,                                                             :
                                                                       :
                              Plaintiff,                               :
                                                                       :           19-CV-11572 (JMF)
              -v-                                                      :
                                                                       :           MEMORANDUM OPINION
THE URBAN ASSEMBLY, INC. D/B/A URBAN                                   :           AND ORDER
ASSEMBLY SCHOOL FOR THE PERFORMING                                     :
ARTS et al.,                                                           :
                                                                       :
                              Defendants.                              :
                                                                       :
-----------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiff Chad Hall brings claims against his former employer, the Urban Assembly School for the Performing Arts, through the New York City Department of Education (the "DOE") and the City of New York, for retaliation and interference under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. His claims rest on the fact that he was fired only days after he allegedly advised the school principal that he intended to take additional medical leave. Under other circumstances, that timing might give rise to an inference of intent to retaliate against Hall or to interfere with his taking of leave. But Defendants argue that that is not the case here because unrebutted evidence shows that they made the decision to fire Hall for repeated disciplinary violations *before* his conversation with the school principal about taking more leave. For the reasons that follow, the Court agrees with Defendants and, on that basis, grants their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## BACKGROUND

The relevant facts, drawn from the admissible materials that the parties submitted in connection with this motion, are either undisputed or described in the light most favorable to Hall.  *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

Hall was hired as an Assistant Dean of Students at the Urban Assembly School for the Performing Arts, a New York City public high school, in October 2012.  ECF No. 25 ("Am. Compl."), at ¶ 11.  As Assistant Dean, he was responsible for managing student behavior and discipline and received extensive training in de-escalating difficult situations with students.  ECF No. 61-4 ("Hall Tr."), at 33-35.  But during his employment at Urban Assembly, Hall was disciplined several times himself.  First, in August 2015, he was suspended for two days after a substantiated allegation that he had engaged in corporal punishment and verbal abuse of a student.  ECF No. 51-3.  Second, on October 26, 2017, Hall was formally reprimanded for arriving late to work on eight occasions between September 9, 2017 and October 4, 2017.  ECF No. 51-4.  And third, on February 6, 2018, Hall was formally reprimanded for "us[ing] poor judgment" by taking a student's hat "and pushing back and forth with the student to hold on to the hat."  ECF No. 51-5.  Hall was explicitly warned that "[a] repeat of this type of behavior in the future will result in a suspension without pay or termination of your employment."  *Id*.

On September 26, 2018, another incident occurred when Hall was helping to distribute cell phones to departing students and one student refused to wait in the line.  Am. Compl. ¶ 14-15.  Hall and the student began yelling at one another, after which the student threw a garbage pail that injured another student.  *Id*. ¶¶ 15, 18; ECF No. 51-6 ("Summary of Investigation").  When the student yelled "suck my dick" to Hall, Hall responded: "grow one."  Am. Compl. ¶ 24.  The next day, the school principal, Meghan McMahon, launched an investigation into the incident, which included taking witness statements and conducting interviews with relevant

parties. ECF No. 51-11 ("McMahon Tr."), at 41; ECF No. 49 ("Defs.' Rule 56.1 Stmt."), ¶ 8. On October 19, 2018, the school concluded that Hall had engaged in verbal abuse of a student. *Id.* ¶ 10. Five days later, McMahon and Joseph Shanahan, an assistant principal, consulted with the DOE's legal department and were advised to draft a letter terminating Hall for verbal abuse. ECF No. 51-7 ("Defs.' Emails"). At or about the same time, however, McMahon went on maternity leave and, as a result, the letter was not delivered to Hall. McMahon Tr. 44, 52. McMahon returned from her leave on January 2, 2019, and two days later followed up with the DOE about Hall's termination. *Id.* at 52. The termination letter was finalized by January 23, 2019. *Id.*

Separately, Hall was involved in a car accident on January 14, 2017, which left him with serious injuries to his hands, neck, left shoulder, and left knee. Hall Tr. 99, 119. On February 17, 2017, he requested disability leave and thereafter took two concurrent leaves, from January 17, 2017, to March 31, 2017. ECF No. 51-9; Defs.' Rule 56.1 Stmt. ¶ 4. When Hall returned to work, he was required to wear his arm in a sling for about a month and a half. Hall Tr. 136. Hall subsequently took two additional leaves from work, one in late 2017 and one in early 2018, in connection with surgeries on his shoulder and hand. *Id.* at 121-22. Then, on November 6, 2018, while McMahon was out on maternity leave, Hall visited his doctor and received a letter in which the doctor concluded that "[m]aximum medical improvement has been reached." ECF No. 51-8 at 8. The letter noted that Hall was currently working without restriction and made no reference to future leave being required. *Id.* at 7. Hall submitted the letter to the school in the beginning of January and, on January 18, 2019, discussed it with McMahon. Hall Tr. 94; Am. Compl. ¶ 29. Hall explained that the letter detailed his injuries. Hall Tr. 94. McMahon then asked what the letter meant for the school, and Hall responded that he would work "until my lawyer says different." *Id.* McMahon asked whether Hall intended to go out on disability; in

3

response, Hall stated that he did, and McMahon asked him to keep her informed. *Id.* Five days later, on January 23, 2019, Hall was formally terminated. Defs.' Rule 56.1 Stmt. ¶ 16.

## LEGAL STANDARD

Summary judgment is appropriate when the record demonstrates that there are no genuine disputes as to any material facts and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, that demonstrate the absence of a genuine dispute regarding any material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party, *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## DISCUSSION

The FMLA gives eligible employees an "entitlement" to twelve workweeks per year of unpaid leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); *see Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006). To protect that entitlement, the Act "makes it illegal for employers to: (1) 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right' provided under the FMLA; or (2) 'discharge or in any other manner

discriminate against any individual for opposing any practice made unlawful' by the FMLA." *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 462 (S.D.N.Y. 2011) (quoting 29 U.S.C. § 2615(a)). FMLA claims thus "come in at least two varieties: interference and retaliation." *Woods v. START Treatment & Recovery Ctr., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017). "An employee brings an 'interference' claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." *Id*. By contrast, a retaliation claim involves "an employee actually exercising her rights . . . and then being subjected to some adverse employment action." *Id*. In this case, Hall brings both kinds of claims.

FMLA retaliation and interference claims are subject to overlapping, but distinct analyses. The former are subject to the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Potenza v. City of New York.,* 365 F. 3d 165, 168 (2d Cir. 2004). Under that framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination by showing that (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Id.* If the plaintiff carries that burden, "then the employer must have an opportunity to articulate some legitimate, non-discriminatory reasons for [the difference in treatment] . . . . If the employer articulates such a reason, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the legitimate reasons . . . were a pretext for discrimination." *Young v. United Parcel Serv., Inc.,* 135 S. Ct. 1338, 1345 (2015) (cleaned up). By contrast, interference claims are not subject to the burden-shifting framework. *See, e.g.*, *Sista* 445 F. 3d at 175-76. Instead, a plaintiff must establish (1) that he is an eligible employee under the FMLA; (2) that the defendant is an employer as defined by the FMLA; (3) that he was entitled to take leave under the FMLA; (4) that he gave notice to the defendant of his intention to

take leave; and (5) that he was denied benefits to which he was entitled under the statute. *See Graziado v. Culinary Inst. of Am.*, 817 F. 3d 415, 424 (2d Cir. 2016). Where, as here, the alleged interference takes the form of termination, the plaintiff must prove "that [his] taking of FMLA-protected leave constituted a negative factor in the decision to terminate [him]." *Sista*, 445 F. 3d at 175-76 (cleaned up).

To establish both claims, therefore, Hall must prove causation: for his retaliation claim, he must show that Defendants retaliated against him *because* he exercised his rights under the statute (that is, engaged in protected activity) and, for his interference claim, he must show that his decision or intention to take FMLA-protected leave was at least part of the reason for his termination. He cannot make these showings for one simple reason: The undisputed evidence shows that Defendants had made the decision to fire him as early as October 2018 and certainly no later than January 4, 2019 — *before* Hall even arguably engaged in protected activity or stated an intention to take additional medical leave on January 18, 2019. In other words, "[t]he evidence indicates that the wheels were already in motion to terminate" Hall as of early January 2019; that he may thereafter have engaged in protected activity by advising McMahon of his intention to take additional medical leave "does not render the already-determined course unlawful." *Shaikh v. Nat. Bank of Pak.*, No. 18-CV-3721 (ER), 2020 WL 3415246, at *8 (S.D.N.Y. June 22, 2020); *see also, e.g.*, *Lopez v. City of New York*, No. 14-CV-3285 (NGG), 2016 WL 3129184, at *8 (E.D.N.Y. June 2, 2016) (dismissing a retaliation claim for lack of causation where the "Defendant simply carried out [the] decision" after the plaintiff had engaged in protected activity); *Bowman v. CSX Transp., Inc.*, 22 F. Supp. 3d 181, 191 (N.D.N.Y. 2014) (dismissing an FMLA interference claim where, among other things, "the record shows that [the employer] was considering taking disciplinary action . . . before he even called in sick").

Indeed, Hall's claim is squarely foreclosed by the Supreme Court's decision in *Clark County School District v. Breeden*, 532 U.S. 268 (2001), a Title VII retaliation case that involved a similar set of facts. There, the plaintiff's supervisor "mentioned" to the head of the plaintiff's union that she was "contemplating" the plaintiff's transfer. 532 U.S. at 271-72. One day later, the supervisor learned that plaintiff had filed a discrimination lawsuit against her employer. *See id.* at 272. One month after that, the supervisor followed through on her earlier contemplation and transferred the plaintiff. *See id.* Faced with these facts, the Supreme Court held that the employer was entitled to summary judgment on the plaintiff's claim of retaliation. As relevant here, the Court dismissed the fact that the plaintiff had actually been transferred shortly after her employer learned of the lawsuit as "immaterial in light of the fact that [the employer] concededly was contemplating the transfer before it learned of the suit." *Id.* "Employers," the Court reasoned, "need not suspend previously planned [adverse employment actions] upon discovering" that an employee has engaged in protected activity under a statute prohibiting retaliation, "and *their proceeding along lines previously contemplated, though not yet definitely determined, is no evidence whatever of causality*." *Id.* (emphasis added).

In fact, if anything, the case for summary judgment here is even stronger than it was in *Clark County School District*. In *Clark County School District*, the employer was merely "contemplating" the alleged adverse employment action; the employer did make the decision to pull the trigger until after learning of the plaintiff's protected activity. Yet the Court held in no uncertain terms that the timing was "no evidence whatever of causality." *Id.* Here, by contrast, the unrebutted evidence shows that Defendants were not merely contemplating Hall's termination; they had settled on it. Indeed, the unrebutted evidence — comprised of testimony and contemporaneous emails — indicates that Defendants had made the decision to terminate Hall as early as October 2018. Defs.' Emails; *see also* McMahon Tr. 44 (explaining that, during

7

October, "the investigation had occurred, and there was a consultation with legal, and there was a decision made that the outcome of the investigation would be termination"). According to Hall, the lack of any action between October 2018 and January 2019 suggests that Defendants "might have had permission to terminate Hall" by the earlier date but were "not intending to" to carry out the termination until he notified them that he planned to take additional medical leave. ECF No. 52 ("Pl.'s Opp'n"), at 14. But there is no evidence to support that speculation. To the contrary, the unrebutted evidence reveals that the decision was delayed only because McMahon went on maternity leave, *see* McMahon Tr. 44-46, and that, on or about January 4, 2019, two days after she returned, she reached out to DOE lawyers to get the termination done, *id.* at 52. The fact that it took a few weeks for the plan to be executed, during which Hall arguably alerted McMahon that he intended to take additional medical leave, is "no evidence whatever of causality." *Clark Cnty. Sch. Dist.*, 532 U.S. at 272.

      Hall raises two other arguments in opposition to Defendants' motion, but they require little discussion. First, he alleges that, during McMahon's maternity leave, the assistant principals left in charge "complain[ed] to Hall from October 2018 through December 2018" and that this "complaining," together with "other acts, behaviors and circumstances," "constitutes a chilling retaliatory act." Pl.'s Opp'n 8-9. But to be actionable, retaliatory acts must occur *after* the protected activity, *see Lopez*, 2016 WL 3129184, at *8, and the alleged complaining occurred *before* Hall allegedly requested FMLA leave in January 2019. Second, Hall argues that he was treated differently from a "similarly situated teacher" who, he alleges, "was permitted to strike a student in the face with metal keys" without discipline. Pl.'s Opp'n 15. But this evidence, even if admissible, would not salvage Hall's claim given the fact, discussed above, that Hall's fate was sealed before he even allegedly informed McMahon that he intended to take additional medical leave. And in any event, the sole evidence regarding the other teacher — Hall's testimony that

8

he heard the story from a student, Hall Tr. 131 — is "rank hearsay and therefore cannot defeat a motion for summary judgment." *Stuart v. T-Mobile USA, Inc.*, No. 14-CV-4252 (JMF), 2015 WL 4760184, at *5 (S.D.N.Y. Aug. 12, 2015); *see, e.g., Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) ("[I]nadmissible hearsay [is] an insufficient basis for opposing a motion for summary judgment."); *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 202 (S.D.N.Y. 2009) (granting summary judgment for the defendants on an FMLA interference claim that was supported only by hearsay statements in the plaintiff's deposition).

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment must be and is GRANTED.[1] The Clerk of Court is directed to terminate ECF No. 48, to enter judgment for Defendants on all claims, and to close the case.

SO ORDERED.

Dated: January 3, 2022
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[1] As Hall concedes, *see* Pl.'s Opp'n 6, his claims against the City of New York are subject to dismissal for another reason: The City is not a proper party because the City and the DOE are separate legal entities and Hall does not allege that the City took any action of its own. *See* N.Y. Ed. Law § 2590-g(2); *Williams v. City of New York*, No. 12-CV-8518 (RJS), 2014 WL 1383661, at *8 (S.D.N.Y. Mar. 26, 2014) ("[T]he City is not liable for the actions of the NYCDOE or its employees absent some action by the City itself.").